# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# JONESBORO DIVISION

**MARILYN MATLOCK**                                        **PLAINTIFF**

**VS.**                   **Case No. 3:19-cv-00062 PSH**

**ANDREW SAUL, Commissioner,**
    **Social Security Administration**[1]                           **DEFENDANT**

## ORDER

Plaintiff Marilyn Matlock ("Matlock"), in her appeal of the final decision of the Commissioner of the Social Security Administration (defendant "Saul") to deny her claim for Disability Insurance benefits (DIB) and supplemental security income (SSI), contends the Administrative Law Judge ("ALJ") erred by arriving at a residual functional capacity ("RFC") determination not supported by the evidence. The parties have ably summarized the medical records and the testimony given at the administrative hearing conducted on March 19, 2018. (Tr. 30-51). The Court has carefully reviewed the record to determine whether there is substantial evidence in the administrative record to support Saul's decision. 42 U.S.C. § 405(g). The relevant period under consideration is from June 30, 2016, the date of alleged onset, through September 14, 2018, when the ALJ ruled against Matlock.

---

[1] Andrew Saul is the current Commissioner of the Social Security Commission and is automatically substituted as the proper defendant. The Clerk is directed to amend the style of the case to reflect this substitution. Fed. R. Civ. P. 25(d).

1

*The Administrative Hearing:*

At the March 19, 2018 hearing Matlock was 52 years old with a high school education. She was 5'6" and weighed 170 pounds. She had previous relevant work experience as a manager for fast food services, and she testified her employment at McDonald's stretched from 1989 to 2016. She testified she stopped working due to a back problem, arthritis in her spine which hinders her legs, and high blood pressure which induces dizziness. Matlock indicated she could not stand or sit for long periods, and estimated she could stand for 20-30 minutes, sit for 20-30 minutes, and lift 10-20 pounds. Dr. Sumner Cullom ("Cullom"), a treating physician, found Matlock was not a candidate for surgery, according to Matlock. Matlock stated she was taking pain medications for her back and high blood pressure. The medications provide limited relief, according to Matlock, and she had no side effects.

Matlock described limited daily activities which include lying down for much of the day and cooking and cleaning intermittently. Former activities include singing in her church choir and going to the movies, which she stated she stopped in September 2017 and in 2015, respectively. Matlock resides with her mother and her son, and they assist her with some chores. Matlock stated she could no longer clean her house as quickly as she could previously, with the chore taking her 5-6 hours with rest periods. Matlock is able to drive and she can shop for groceries with assistance. She estimated that she cooks the "majority" of dinners at her home, but needs breaks while cooking. Matlock also stated she does most of the meal cleanup, with breaks and some assistance from her mother and son. Matlock acknowledged that Great River Pain Management recommended that she exercise as tolerated four times a week, but she was unable to do so. (Tr. 30-48).

Stephanie Ford ("Ford"), a vocational expert, testified. The ALJ posed a hypothetical

2

question to Ford, asking her to assume a worker of Matlock's age, education, and experience, who had the following abilities: lift and carry 20 pounds occasionally and 10 pounds frequently; stand and walk for 6 hours in an 8 hour day; push and pull 20 pounds occasionally and 10 pounds or less frequently; and occasionally stoop, climb stairs, crouch, crawl, and balance. Ford testified that such a worker could perform Matlock's past relevant work as a manager of fast food services. The hypothetical question was altered to include a sit/stand option, and Ford indicated such a worker could not perform the past relevant job but could work as a ticket seller or storage facility rental clerk. (Tr. 48-50).

*ALJ's Decision:*

In his September 14, 2018 decision, the ALJ determined that Matlock had not engaged in substantial gainful activity since June 30, 2016, the alleged onset date. Severe impairments found by the ALJ were degenerative disc disease, obesity, hypertension, and dizziness. The ALJ found Matlock did not meet any Listing, and he explicitly addressed Listings 1.04, 2.00, 4.00, 9.00, and 12.00. The ALJ determined that Matlock had the RFC to perform light work with the restrictions contained in the initial hypothetical question posed to Ford. This RFC formulation was based, in part, upon the ALJ's determination that Matlock's subjective statements were "not entirely consistent with the medical evidence and other evidence in the record." (Tr. 19). The ALJ addressed Cullom's June 2017 medical source statement, which indicated that Matlock could lift less than 10 pounds, stand and sit for 20 minutes at a time, reach for 2/3 of a workday, could never engage in any postural maneuvers, must avoid concentrated exposure to all environmental elements, and would miss more than three days of work each month. The ALJ found that Cullom's "opinion is not supported by the evidence of record." (Tr. 20). Noting normal neurological exams and

3

contrary findings in Cullom's own treatment notes, the ALJ accorded Cullom's opinion "little weight." (Tr. 20). The ALJ also commented that Matlock did not allege any limitations in her ability to reach or handle. In addition, the ALJ cited Matlock's daily activities, which included driving, cooking, and cleaning, as well as the absence of any atrophy, as evidence that she was not severely impaired. Relying upon Ford's testimony, the ALJ determined that Matlock was capable of performing her past relevant work and, therefore, was not disabled. (Tr. 15-22).

*Medical Evidence During the Relevant Period:*

On June 30, 2016, Matlock was seen for an initial evaluation by Dr. Alan Kraus ("Kraus") at the Great River Medical Center. Matlock complained of back, right hip, and right posterior leg pain, worse when on her feet or walking at work. Matlock, who was taking Tramadol, Soma, and prednisone, was assessed with an antalgic gait and positive straight leg raising on the right. Kraus diagnosed her with lumbar disc disease, lumbar spondylosis, and lumbar radiculopathy. Kraus scheduled Matlock for an epidural block and issued a one-time prescription for hydrocodone. (Tr. 345-347).

On July 1, 2016, Cullom noted marked paraspinal tension in the lumbar spine, prescribed Lisinopril, and directed Matlock not to work until seen at the pain clinic on July 14. (Tr. 309-310). An epidural injection was administered on July 14, and Matlock was discharged with a prescription for hydrocodone. (Tr. 351).

Matlock saw Cullom four days later and reported that a pain doctor advised her to see a neurosurgeon. Cullom again noted tension in the lumbar spine and also found a positive left straight leg raise. Cullom's plan was to refer Matlock to a neurosurgeon. (Tr. 307-308). At an August 1, 2016 visit, Cullom wrote that Matlock's MRI showed "some degenerative disc disease no operative

4

problems. Patient is going to the pain clinic to get back injections. She states that she is no better." (Tr. 305). Cullom's physical exam revealed some muscle tenseness in the lumbar spine, negative straight leg raise, and normal neurological exam. Cullom diagnosed acute and chronic lumbar strain and degenerative disc disease and prescribed Flexeril and Prednisone. (Tr. 306).

The following day, Matlock was seen by Victoria Jacoby ("Jacoby"), A.P.N., at Great River Medical Center for a follow up visit on the pain management plan she agreed to in her initial visit with Kraus in June 2016. Jacoby recorded Matlock's history as including back, hip, and leg pain which had worsened over the past months, causing her to miss work. Jacoby explained to Matlock that she had violated her "narcotic agreement [by filling a Tramadol prescription] and I am not comfortable giving her any narcotics at today's visit." (Tr. 332). Matlock was described as working full time, in no obvious distress, with an antalgic gait, positive straight leg raising on the right, motor testing and light touch sensation normal, with "exaggerated pain behavior." (Tr. 333). Jacoby recorded that Matlock had lumbar disc disease, lumbar spondylosis, and lumbar radiculopathy.

When Kraus saw Matlock on August 11, 2016, Matlock indicated she was unaware of the parameters of the narcotic agreement. Kraus agreed to continue seeing her but "the only thing I can offer her is a facet injection and see if she needs RF (radio frequency) ablation." (Tr. 338). Kraus recorded that Matlock was working full time at McDonald's, had back pain and tenderness over the lower lumbar facets, and normal neurologic exam with negative straight leg raising and normal motor and reflex testing. Kraus refilled the hydrocodone, prescribed Meloxicam, and stressed Matlock's adherence to the narcotic agreement. (Tr. 338-339).

Matlock informed Cullom in an August 17, 2016 visit that she was scheduled for a pain injection the next day but was also scheduled to work. Cullom's examination indicated that

5

Matlock could move all extremities, had marked paraspinous muscle tenseness of the lumbar spine, and had a positive straight leg raise bilaterally. Cullom assessed Matlock with bilateral low back pain without sciatica and back pain-lumbar strain-acute and chronic. Cullom's plan was to keep Matlock off work until she received pain injections. (Tr. 302-304). A lumbar spine x-ray taken that day showed degenerative disc changes at L2-3 and L4-5 with no acute fracture or listhesis. (Tr. 318). Kraus administered two pain injections the following day. (Tr. 334).

On September 6, 2016, Matlock saw Jacoby. Jacoby recorded the same diagnoses as she had in August (lumbar disc disease, lumbar spondylosis, and lumbar radiculopathy), and found her to have an antalgic gait, positive straight leg raise on the right, and normal motor testing and light touch sensation, with "exaggerated pain behavior." (Tr. 329). Matlock reported minimal pain relief with the injections. Jacoby planed to refill her medication prescriptions, and discussed alternative therapies including stretching and yoga with Matlock. (Tr. 328-329).

Dr. Howard Bromley ("Bromley"), at Great River Medical Center, saw Matlock on October 6, 2016. Matlock's chief complaint was back pain which resulted from a work-related accident and gradually came on over the past three years. Matlock's urine test was positive for opiates, and she told Bromley she had obtained Norco from a friend and Xanax from her mother. Bromley warned Matlock about taking medications from others. Bromley assessed Matlock with low back pain, degeneration of lumbosacral intervertebral disc, insomnia, thigh pain, and lumbar spondylosis. He recommended a medial branch block and discussed cessation of opioids. He encouraged Matlock to exercise as tolerated 3-4 times a week, but no more than 5 times a week, and counseled her against bed rest or inactivity lasting more than 4 days. (Tr. 411-413). Bromley administered a medial branch block on November 9, 2016. (Tr. 414-417).

6

A.P.N. Lisa Booker ("Booker") saw Matlock the day after the medial block. Matlock complained of back pain, intermittent, and insomnia despite amitriptyline. Booker's physical examination reflected lumbar paravertebral tenderness with muscle spasm, no immediate distress, no gross deformities or movement problems with any extremities. Booker assessed bilateral low back pain without sciatica and insomnia and prescribed Flexeril and Ambien. (Tr. 438-440).

Matlock returned to Bromley on November 21, 2016, complaining that her pain was unchanged and her medication was not providing relief. She rated her pain as 8 on a scale of 1-10. Bromley again encouraged Matlock to exercise as tolerated 3-4 times a week, but no more than 5 times a week, counseled her against bed rest or inactivity lasting more than 4 days, discussed cessation of opioids, and recommended a medial branch block. Bromley increased her Norco, Mobic, and Elavil dosages. (Tr. 463-466).

Matlock saw Bromley again on December 12, 2016. She rated her pain at 4, reported that the medication increases had improved her pain, and stated that the medial branch block only relieved her pain for three hours. Bromley again encouraged Matlock to exercise as tolerated 3-4 times a week, but no more than 5 times a week, and again counseled her against bed rest or inactivity lasting more than 4 days. (Tr. 458-461).

Bromley saw Matlock on January 4, 2017. She reported her pain at level 8, but also indicated the "pain is fairly well controlled on current medication regimen." (Tr. 455). Matlock stated her physical functioning, family relationships, social relationships, and overall functioning had worsened, but her sleep was improved. Bromley again encouraged Matlock to exercise as tolerated 3-4 times a week, but no more than 5 times a week, and again counseled her against bedrest or inactivity lasting more than 4 days. (Tr. 454-456).

About one month later, Matlock was seen by Cullom. Matlock complained of back pain and allergies, citing "a lot of mold where she works." (Tr. 554). Cullom's physical examination noted that Matlock had muscle tenseness in her lumbar spine, a negative straight leg raise, soreness in all joints with moderate deformity, and a normal neurological exam. Cullom prescribed Prednisone, Flexeril, and amitriptyline, and replaced Mobic with Indocin. Cullom documented that his office does not prescribe hydrocodone. (Tr. 554-555).

Four days after seeing Cullom, February 13, 2017, Matlock saw Bromley. Matlock rated her pain at 7 and indicated she had experienced 5 "better" days out of the last 30 days. (Tr. 531). Bromley's physical exam revealed no significant changes since his last examination. Bromley again encouraged Matlock to exercise as tolerated 3-4 times a week, but no more than 5 times a week, and again counseled her against bedrest or inactivity lasting more than 4 days. Bromley increased the dosage of Norco and refilled Matlock's Movantik prescription. (Tr. 531-535). Matlock saw Bromley again in March, April, and May of 2017. He indicated at each visit that Matlock had experienced 5 "better" days out of the last 30 days. Bromley continued to encourage Matlock to exercise as tolerated 3-4 times a week, but no more than 5 times a week, and counseled her against bed rest or inactivity lasting more than 4 days. At the May visit, Bromley switched Matlock from Norco to Percocet. (Tr. 569-583).

On June 5, 2017, Matlock saw Cullom. She complained of high blood pressure and back pain. Cullom's physical exam showed muscle tenseness of the lumbar spine, normal extremities, and a normal neurological exam. Cullom assessed her with uncontrolled hypertension, degenerative joint disease - moderate- worsening, degenerative disc disease - moderate - worsening, and depression. The dosage of Lisinopril was increased. (Tr. 551-553).

On the same day, Cullom executed a Medical Source Statement - Physical which rated Matlock with the following abilities: lift and carry less than 10 pounds occasionally or frequently; stand and walk less than 2 hours a day, and stand and walk 20 minutes without a break; sit less than 2 hours a day, and sit 20 minutes without a break; reach in all direction 2/3 of workday; finger for 2/3 of workday; handle for 2/3 of workday; and never climb, balance, stoop, kneel, crouch, or bend. Cullom also opined Matlock would need frequent rest periods, longer than normal breaks, and the opportunity to shift at will from sitting or standing/walking. Cullom indicated Matlock was unable to maintain an ordinary work routine or schedule, and that she had a decreased ability to concentrate or persist on tasks, and would need to be redirected frequently. Cullom found Matlock should avoid concentrated exposure to extreme cold, extreme heat, high humidity, fumes, odors, dust, gas, perfumes, soldering fluxes, solvents/cleaners, chemicals, and sunlight. Cullom estimated Matlock would be absent from work more than three days a month. (Tr. 547-548).

On June 11, 2017, Bromley saw Matlock for medication refills. In August, September, October, and December of 2017, and in January of 2018, Matlock saw various nurse practitioners at Great River Pain Clinic. She saw Bromley in November 2017. She rated her pain at between 5 and 8. At the December visit, she reported having 25 "better" days over the past month. (Tr. 588). She received multiple refills of Percocet over these visits, and also a refill of Movantik and indomethacin. (Tr. 561-639).

**RFC Determination:**

Matlock's sole argument is that the ALJ erred in determining her RFC. There is no error in the RFC conclusion reached by the ALJ. The ALJ is not obligated to base his RFC opinion upon a claimant's subjective statements, nor is he obligated to build his RFC determination around the

9

opinion of a single medical care professional to the exclusion of others. Instead, it "is the ALJ's responsibility to determine a claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own descriptions of his limitations." *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001).

Matlock faults the ALJ for his treatment of Cullom's medical source statement. The Court finds, however, that the ALJ correctly noted that Cullom's opinion was inconsistent with his own treatment notes and with other medical evidence in the record. A treating physician's medical opinions are given controlling weight if they are well-supported by medically acceptable clinical and laboratory diagnostic techniques and are not inconsistent with the other substantial evidence. *See Choate v. Barnhart*, 457 F.3d 865 (8th Cir. 2006). Here, Cullom's treatment notes are at odds with the medical source statement. While he consistently diagnosed Matlock with muscle tenseness in the lumbar spine, his restrictions on fingering, handling, and reaching are inconsistent with his treatment notes from July and August 2016, and from June 5, 2017 (the date of the medical source statement), which documented normal extremities. The sole finding supporting any limitation in this regard from Cullom is the February 2017 notation that Matlock's joints were sore with moderate deformity. In addition, Cullom's treatment notes show an inconsistent pattern concerning Matlock's straight leg test results – negative straight leg raise in July 2016, positive bilaterally in August 2016, and negative results in February 2017. This variation is not corroborative of the severe limitations assigned by Cullom.

In addition to Cullom's own findings, other medical providers contradict the June 2017 medical source statement. Kraus, like Cullom, found Matlock's straight leg test was negative. An MRI ordered by Kraus showed degenerative changes but no evidence of stenosis or disc herniation.

10

Bromley consistently and repeatedly urged Matlock to exercise and avoid extended inactivity. Jacoby cited exaggerated pain behavior on two occasions, and Jacoby and Bromley both were concerned with Matlock's use of narcotics. *Gates v. Commissioner, Social Security Administration*, 721 Fed.Appx. 575 (May 14, 2018). While a treating physician's opinion should not ordinarily be disregarded and is entitled to substantial weight, such an opinion may be discounted or even disregarded where other medical assessments are supported by better or more thorough medical evidence. *Fentress v. Saul*, 854 F.3d 1016 (8th Cir. 2017). Here, the ALJ's decision to discount the opinions in Cullom's medical source statement was supported by other medical assessments by treating physicians, and the decision was supported by substantial evidence.[2]

Matlock also faults the ALJ's consideration of her daily activities, his failure to consider her excellent work history, and his credibility assessment. There is no merit to these assertions. Even if the Court were to generously assume the ALJ overstated Matlock's ability to perform daily activities, the overall conclusion reached by the ALJ is supported by substantial evidence. Matlock's credibility was properly discounted because her testimony that she had not worked since the alleged onset date of June 30, 2016, was in conflict with medical provider notes from August 2, 11, and 17, 2016, and from February 9, 2017, all of which reference her working. In addition, the ALJ explicitly stated that he considered Matlock's work history, along with the medical evidence and the relevant factors relating to her subjective complaints. (Tr. 19).

The RFC determination of the ALJ was not erroneous.

---

[2] Matlock frames her argument as an "either/or" scenario, where the ALJ allegedly rejected Cullom's findings and wholly embraced the opinions of the nonexamining disability screeners. This mischaracterizes the findings of the ALJ. While the nonexamining disability screeners are cited, the ALJ did not exclusively rely upon them. Instead, the ALJ cites other treating physicians, imaging results, and improvement with medication as supportive of his decision.

In summary, substantial evidence supports the determinations reached by the ALJ. The Court is mindful that its task is not to review the record and arrive at an independent decision, nor is it to reverse if it finds some evidence to support a different conclusion. The test is whether substantial evidence supports the ALJ's decision. *See, e.g., Byes v. Astrue*, 687 F.3d 913, 915 (8th Cir. 2012). This test is amply satisfied in this case.

IT IS THEREFORE ORDERED that Saul's final decision is affirmed and Matlock's complaint is dismissed with prejudice.

IT IS SO ORDERED this 25th day of September, 2019.

_____
UNITED STATES MAGISTRATE JUDGE